IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHAEL HUNT, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-15-3140 |
| MICHAEL HOLDSCLAW, et al., | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants', former Secretary of the Department of Public Safety and Correctional Services ("DPSCS") Gregg L. Hershberger ("Secretary Hershberger"), former Warden of Jessup Correctional Institution ("JCI") John Wolfe ("Warden Wolfe"), Correctional Officer ("C.O.") II Michael Holdsclaw ("Officer Holdsclaw"), C.O. II Justice Marboah ("Officer Marboah"), and C.O. II Ayokunle Ayodele ("Officer Ayodele") (collectively, the "State Defendants"),[1] Motion to Dismiss or, in the alternative, Motion for Summary Judgement (ECF No. 20). Also pending are Plaintiff Michael Hunt's Motions for Appointment of Counsel (ECF Nos. 10 and 22). The Court finds no hearing necessary pursuant to Local Rule 105.6 (D.Md. 2016). For the reasons that follow, the Court will grant the State Defendants' Motion and deny Hunt's Motions.[2]

---

[1] The Clerk shall correct the docket to reflect the full and correct spelling of the State Defendants' names.

[2] A federal district court's power to appoint counsel under 28 U.S.C. § 1915(e)(1) (2012) is discretionary and may be considered when an indigent claimant presents exceptional circumstances. See Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). Upon careful consideration of the motions and previous filings by Hunt, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. No hearing is necessary to the disposition of this case and there are no exceptional circumstances that would warrant the appointment of an attorney to represent Hunt under §1915(e)(1). Accordingly, the Court will deny Hunt's Motions for Appointment of Counsel.

I.     BACKGROUND

A.     Hunt's Allegations[3]

Hunt is an inmate at JCI.  He alleges that on February 22, 2015 at approximately 6:00 p.m., corrections officers escorted him to a shack at JCI, which he describes as a "hangout station for officers." (Compl. at 3, ECF No. 1).  Hunt states the officers ordered him to take his clothes off and that he "ignored the comment." (Id.).  When Hunt stood up from the chair in which he was sitting, he alleges that Officer Justice Marboah punched him in the face.  (Id.).  Following the punch to his face, Hunt states that Officers Holdsclaw and Ayodele assisted Officer Marboah in taking Hunt to the ground.  (Id.).  Officer Holdsclaw then straddled Hunt and attempted to restrain Hunt's arms, while Officer Ayodele, who was positioned on Hunt's left side, and Officer Marboah, who was positioned on Hunt's right side, repeatedly kicked and punched Hunt.  (Id.).  The kicks and punches continued until Officer Holdsclaw told Officers Marboah and Ayodele to "stop having fun" and handcuffs were placed on Hunt.  (Id.).

Hunt maintains that as a result of the assault (the "Altercation") he suffered numerous injuries to his face, neck, back, waist, and arms.  (Id.).  He maintains his right eye was "partially swollen," the inside of his mouth and his forearms were cut, there was a laceration to his hand, and a laceration on his back below the shoulder.

Hunt complained about the Altercation to Warden Wolfe who responded that the injuries were caused by Hunt's own actions and found Hunt's complaint to be without merit.  (Id.).  The Commissioner of Corrections upheld Warden Wolfe's decision and dismissed Hunt's complaint. (Id.).  Hunt maintains that a proper investigation would have established that Officers Holdsclaw, Ayodele, and Marboah used excessive force.  (Id.).  Hunt admits to using profanity during the

---

[3] Hunt's Complaint is unverified.

Altercation. (Id.). Hunt further alleges that in dismissing his administrative complaint, Warden Wolfe and Secretary Hershberger sanctioned the Officers' excessive use of force. (Id.).

**B.     State Defendants' Response**

The State Defendants paint a far different picture of the Altercation. At approximately 6:10 p.m., during mass movement for the dinner meal for C-Building at JCI, Officer Babatunde Abidogun saw Hunt enter the dining room from the wrong direction of the compound. (Defs.' Mot. Dismiss or Mot. Summ. J. Ex. 1 ["DPSCS Records"] at 6, 14, ECF No. 20-3).[4] Officer Abidogun inquired about Hunt's housing assignment and Hunt replied he was assigned to C-Building. (Id.). Officer Abidogun then asked where Hunt was coming from, and Hunt walked away stating, "don't start your African bullshit." (Id.).

Officer Marboah then approached Hunt and asked for his identification card. (Id.). Officer Abidogun saw Hunt clench his fist and raise his hand above his belt level toward Officer Marboah. (Id.). Based on that observation, Officer Abidogun called Officer Holdsclaw, who was the officer in charge of the compound, for back-up. (Id.). When Officer Holdsclaw arrived, Hunt was shouting at Officers Marboah and Abidogun and refusing orders to leave the dining room. (Id. at 59). Officer Holdsclaw gave Hunt a direct order to leave the dining room, Hunt complied, and Officers Holdsclaw and Marboah escorted Hunt from the area without further incident. (Id.).

When Officers Holdsclaw and Marboah arrived with Hunt at the Compound office, which Hunt refers to in his Complaint as the "shack," Marboah gave Hunt an order to prepare for a strip search. (Id. at 14). Hunt refused to comply and instead exclaimed, "if you touch me, I will f**k

---

[4] This exhibit represents DPSCS's records of the Altercation. The State Defendants submitted a declaration that the records are "original records made at or near the time of the recorded event, by an individual with personal knowledge of the recorded event, and were kept, made and maintained by the DPSCS." (DPSCS Records at 1). Officers Holdsclaw, Ayodele, and Marboah submitted sworn declarations in which they confirm the details of the Altercation presented in DPSCS's records. (See Defs.' Mot. Dismiss or Mot. Summ. J. Exs. 8–10, ECF Nos. 20-10 through 20-12).

you up." (Id.). Officer Marboah gave Hunt another order to prepare for a strip search and Hunt advanced toward Officer Marboah aggressively and pushed against Officer Marboah's chest with both of his hands. (Id. at 59, 67–71). Officer Marboah responded by grabbing Hunt's left arm and Officer Holdsclaw grabbed Hunt's right arm, taking Hunt to the floor to control him. (Id.). Hunt continued to struggle and resisted being handcuffed. (Id.). Officer Ayodele then responded to the area to assist and held Hunts' hands behind his back while Officer Holdsclaw applied handcuffs. (Id. at 28, 77–79). Officer Marboah advised Hunt he would be receiving a Notice of Infraction for his actions. (Id. 67–71). Officer Julius Akingbehin then escorted Hunt to the medical department for evaluation. (Id. at 73–74).

Margaret Adeoye, R.N., ("Nurse Adeoye") examined Hunt and noted that he had several lacerations to his back, neck, forehead, and right upper side of his face. (Id. at 36). Nurse Adeoye also noted "profuse bleeding," but did not note the origin of the bleeding. (Id.). A further notation states the bleeding was controlled. (Id.). She further noted that Hunt had pain in the area of his ribs, but that his abdomen was not painful or tender and otherwise did not show a sign of injury. (Id.). In addition, Hunt complained of pain in his lower back and lower extremities, but Nurse Adeoye noted there was no sign of bleeding from those areas of his body. (Id.). Hunt received 650 mg of Acetaminophen for a headache. (Id.). On February 27, 2015, five days after the incident, Hunt received an x-ray of his chest which revealed a subtle non-displaced fracture of the seventh rib. (Id. at 154, 156).

Following the Altercation, Officer Marboah charged Hunt with violation of rules 102 (assault or batter on another inmate), 104 (use of threatening language), 312 (interfering with or resisting the duties of staff), and 405 (insolence, disrespect, vulgar language). (Id. at 68). At an adjustment hearing on April 7, 2015, a hearing officer found Hunt guilty of violating rules 104, 312, and 405. (Mot. Dismiss or Mot. Summ. J. Ex. 4 at 3, ECF No. 20-6). The hearing officer noted that

Hunt admitted to telling the Officers to "get the f**k away from" him.  (Id. at 4).

## C.   Procedural History

On October 15, 2015, Hunt filed his unverified Complaint with this Court, alleging the State Defendants violated his federal constitutional rights when they used excessive force during the Altercation.  (ECF No. 1).  On January 15, 2016, Hunt filed an unopposed Motion for the Appointment of Counsel (ECF No. 10).  On April 6, 2016, the State Defendants filed their Motion to Dismiss or, in the alternative, Motion for Summary Judgement (ECF No. 20), which Hunt opposed (ECF No. 24).  On April 18, 2016, Hunt filed a second unopposed Motion for Appointment of Counsel (ECF No. 22).

## II.   DISCUSSION

### A.   Legal Standards

#### 1.   Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

The State Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56.  A motion styled in this manner implicates the Court's discretion under Rule 12(d).  See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd sub nom., Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty, 684 F.3d 462 (4th Cir. 2012).  Under Rule 12(d), when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."  The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion.  First, that the "parties be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and second, "that the parties first 'be afforded a reasonable opportunity for discovery.'"  Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor

of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (quoting Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985)).

When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). "[T]he party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). Rule 56(d) provides that the Court may deny or continue a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." "[T]he failure to file an affidavit under Rule 56[(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995) (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)).

Here, the State Defendants caption their Motion in the alternative for summary judgment and attach matters beyond Hunt's Complaint for the Court's consideration. Furthemore, Hart has not submitted a Rule 56(d) affidavit expressing a need for discovery. Accordingly, the Court will treat the State Defendants' Motion as one for summary judgment.

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A).  Once a motion for summary judgment is properly made and supported, the nonmovant has the burden of showing that a genuine dispute of material fact exists.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

A "material fact" is one that might affect the outcome of a party's case.  Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.  A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  Anderson, 477 U.S. at 248.

### 2. **Eighth Amendment: Excessive Use of Force**

Claims that prison officials used excessive force implicate the Eighth Amendment to the United States Constitution.  Tedder v. Johnson, 527 F.App'x 269, 272 (4th Cir. 2013) (quoting Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996)).  The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned."  Williams, 77 F.3d at 761.  To determine whether prison officials have violated an inmate's Eighth Amendment rights, the Court must analyze objective and subjective components.  Id.

Under the objective component, the Court must consider "whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious."  Id.  "An injury is sufficiently serious for purposes of the objective component of an Eighth Amendment excessive force claim as long as it

rises above the level of de minimus harm." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Hudson v. McMillian, 503 U.S. 1, 9–10 (1992)).  Additionally, satisfying the objective component "demands only that the force used be 'nontrivial.'" Evans v. Martin, No. 2:12-CV-03838, 2014 WL 2591281, at *5 (S.D.W.Va. June 10, 2014) (quoting Wilkins v. Gaddy, 559 U.S. 34, 39 (2010)).

Under the subjective component, the Court must assess "whether the prison official acted with a sufficiently culpable state of mind." Williams, 77 F.3d at 761.  "The state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" Iko, 535 F.3d at 239 (quoting Whitley v. Albers, 475 U.S. 312, 322 (1986)).  The Court may consider four non-exclusive factors when assessing whether a prison official acted with wantonness:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

Id. (quoting Whitley, 475 U.S. at 321).  The Court should also consider "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (quoting Whitley, 475 U.S. at 320–21).

**B.    Analysis**

**1.    Officers Holdsclaw, Ayodele, and Marboah**

The record demonstrates that the objective component of Hunt's Eighth Amendment claim is satisfied.  As a result of the Altercation, Hunt suffered a broken rib and several lacerations to his back, neck, forehead, and right upper side of his face.  (Id. at 36).  The Court finds these physical injuries rise above the de minimus level and are sufficiently serious for purposes of an Eighth Amendment claim.

Hunt fails, however, to show there is a genuine dispute as to whether Officers Holdsclaw, Ayodele, and Marboah acted "with a sufficiently culpable state of mind." Williams, 77 F.3d at 761. It is undisputed that Hunt refused at least two orders to submit to a strip search, verbally threatened the Officers, pushed Officer Marboah in the chest, and resisted being handcuffed. (See DPSC Records at 58). Hunt's conduct necessitated use of force by the Officers and taking Hunt to the ground and handcuffing him was a reasonable, tempered response by the Officers. Accordingly, because Hunt fails to show there is a genuine dispute as to whether the subjective component of his Eighth Amendment claim is satisfied, the Court concludes Officers Holdsclaw, Ayodele, and Marboah are entitled to judgment as a matter of law.

### 2. Secretary Hershberger and Warden Wolfe

There is no respondeat superior liability under 42 U.S.C. § 1983. Love–Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004). Thus, "for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" Garraghty v. Com. of Va., Dep't of Corr., 52 F.3d 1274, 1280 (4th Cir. 1995) (quoting Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985)). It is well-settled, however, that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)). To establish supervisory liability, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. (quoting Shaw, 13 F.3d at 799).

Because Hunt does not allege that Secretary Hershberger and Warden Wolfe were personally involved in the Altercation, Hunt can only hold them liable under the doctrine of supervisory liability. Hart, however, does not present any evidence that would permit a reasonable jury to find that any of the requirements for supervisory liability are present in this case. Accordingly, the Court concludes Secretary Hershberger and Warden Wolfe are also entitled to judgment as a matter of law.

### III.   CONCLUSION

For the reasons stated above, the State Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgement (ECF No. 20) is GRANTED and Hunt's Motions for Appointment of Counsel (ECF Nos. 10 and 22) are DENIED. A separate Order follows.

Entered this 2nd day of August, 2016

/s/
_____
George L. Russell, III
United States District Judge